Glander v. Glander, 167 Wis. 12.

GLANDER and others, by guardian *ad litem,* Respondents, vs. GLANDER and another, Appellants.

*January 10—February 5, 1918.*

*Trusts and trustees: Oral agreement to convey land: Possession: Performance: Evidence: Transactions with decedents: Competency of witnesses: Parol evidence affecting writings: Consideration for conveyance of land: Following trust fund: Persons liable as trustees.*

1. Findings by the trial court that an oral agreement was made between E. (plaintiffs' deceased father) and his parents that in consideration of his supporting and caring for them during their lives they would convey to him their farm and personal property; that by virtue of such agreement he took actual possession of the land and personal property and continued in possession thereof; and that he fully performed the agreement on his part, are *held* to be sustained by the evidence.

2. The action being to establish a trust in plaintiffs' favor in respect to said land (the legal title to which had come to a brother of E.) or in the proceeds of a mortgage thereof, E.'s widow was not incompetent, under sec. 4069, Stats., to testify to the making of said oral agreement, since the plaintiffs did not claim from, through, or under her, and she was not a party, either necessary or proper, to the action, and, E. having never been seised of the premises, she was never entitled to any dower interest therein.

3. Parol evidence was admissible to show that a mortgage of said land, given by E.'s widow to his brother when the latter conveyed the land to her, was to be held by the brother as trustee for the plaintiffs, E.'s children, although such trust was not expressed in the instrument.

4. The true consideration for a conveyance of real estate may always be inquired into and established by parol, although upon its face the conveyance be absolute.

5. The amount of the mortgage above mentioned having been paid to E.'s said brother after a sale of the land, and the purpose of this action being to follow said fund and impress it with a trust in favor of plaintiffs, another brother of E., who received no part of said fund, cannot be held liable therefor as trustee, even though he may have assisted the brother first mentioned by making false representations to E.'s widow.

APPEAL from a judgment of the circuit court for Fond du Lac county: E. V. WERNER, Judge. *Affirmed as to one defendant; reversed as to the other.*

An action in equity to compel an accounting and establish a trust in favor of the plaintiffs. Frederick Glander and Augusta Glander, his wife, had five children: *Albert,* Carl, *Leo,* Ewald, and Minnie, married Heise. *Albert,* Carl, and *Leo* left home before attaining their majority. Ewald remained to work the farm. Ewald married one Amelia, and to them was born one child, the plaintiff *Lauretta.* Ewald purchased eighty acres of land on credit, and being unable to meet his obligations he conveyed the land to his father in December, 1891. In November, 1893, the wife, Amelia, commenced an action against Ewald for divorce, claiming that the deed to the father had been made in fraud of her rights. The divorce was denied, and in April, 1895, Ewald began an action against Amelia for divorce, which resulted in a judgment of divorce in favor of Ewald, alimony of $350 being awarded to Amelia. Ewald continued at home, and on October 10, 1897, married Anna Brusser, who is the mother of the other plaintiffs: *Elsie, Nettie,. Frederick W.,* and *Loretta.* On September 24, 1908, Ewald was accidentally killed. The trial court found that some time between December 31, 1895, and October 10, 1897, Frederick and Augusta Glander entered into an agreement with Ewald wherein and whereby it was agreed that Ewald was to clothe and support and maintain the father and mother jointly and severally during their and each of their lives and care for them in old age, and that in consideration thereof it was agreed by the father and mother that they would convey to Ewald all their personal property and the premises in controversy here; that at the time of the making of said agreement and by virtue thereof Frederick and. Augusta delivered to Ewald the absolute possession of their

personal property and the premises referred to; that Ewald took actual and physical possession of the said personal property and real estate by virtue of said agreement and assumed the performance of the obligations contained in the agreement; that the agreement was not reduced to writing nor was a deed of the lands executed, but it was understood and agreed that the farm and property were to belong to Ewald on performance of the terms of said oral agreement, and that Ewald continued in the possession of said property and fully performed the terms of the agreement.

On April 22, 1897, the father, Frederick, through a third party, deeded the farm and personal property in question to the mother, Augusta. Frederick died August 10, 1899. The mother continued to live with Ewald until March 1, 1900, when she went to live with her daughter, Mrs. Heise, where she remained until May 8, 1900, when she was taken to *Leo's* house, where she died September 4, 1901. On July 2, 1901, the mother, Augusta, made a conveyance to *Leo* of the real estate in question and the personal property thereon. Ewald, however, remained in the undisputed possession of the property, treating it as his own, and had the exclusive control and management thereof down to the time of his death, neither his right to the personal property nor to the real estate being in any way brought in question by *Leo* or *Albert*. The trial court further found that on October 12, 1901, *Leo* negotiated for the sale of and sold for $3,000 a part of the lands conveyed to him by the mother, the entire proceeds of the sale going to Ewald, he using the money so received to make improvements on the lands in question and in paying off incumbrances then outstanding. The court further found that upon the death of Ewald the defendants *Albert* and *Leo* falsely represented to Anna, the widow of Ewald, that *Leo* was the sole owner of all the personal property and real estate of which Ewald had possession, and that in order to carry out their fraudulent design *Leo*

and *Albert* represented to Anna that they would cause the said land and personal property to be conveyed to her; that in consideration thereof Anna agreed to pay a certain mortgage of $1,400 then outstanding on the lands and to pay the judgment of $750 in favor of the first wife, Amelia, and she was induced to make and execute a certain mortgage to *Leo* dated November 10, 1908, for $9,850; that in order to carry out their fraudulent design *Leo* and *Albert* represented to Anna, the widow of Ewald, that the said sum of $9,850 would be saved and set aside for the children of Ewald, the plaintiffs in this action, the only heirs at law and next of kin of Ewald, and that the mortgage so taken by *Leo* should be in his name but upon their behalf as their guardian; that Anna, relying upon the promises of *Albert* and *Leo,* signed and delivered the mortgage and entered into the transaction with *Leo* in the belief that the heirs of Ewald would derive the full benefit thereof.   On January 26, 1911, Anna sold the premises in question, the full amount of the mortgage, $10,757.20, being paid to *Leo* in satisfaction of the mortgage.   The court further found that the said sum so paid to *Leo* was received by him in trust for the plaintiffs; that *Leo* and *Albert* are guilty of fraud and have converted the proceeds of said mortgage to their own use, and that they refused to pay the same to the plaintiffs and are jointly and severally liable to the plaintiffs herein; that the purchasers of the premises purchased the same with no knowledge of the claims made by the plaintiffs herein.

Upon the facts as found by the trial court judgment was entered by which it was adjudged that the defendants held the sum of $10,757.20 as trustees for the plaintiffs, and that plaintiffs should recover from the defendants the said sum of $10,757.20 with interest, amounting in all to $14,667.43, with costs and disbursements.   From the judgment so entered the defendants appeal.

For the appellants there was a brief by *Duffy, McCrory &*

*Duffy,* attorneys, and *D. D. Sutherland,* of counsel, all of Fond du Lac, and oral argument by *Mr. Sutherland.*

For the respondents there was a brief by *Sawyer & Sawyer* of Hartford, and oral argument by *H. W. Sawyer.*

ROSENBERRY, J.    Defendants claim that the judgment should be reversed (1) because there is no proof of an agreement by the parents, Frederick and Augusta Glander, to convey to the son Ewald, as found by the court; (2) that the court erred in permitting Anna, the wife of the deceased Ewald, to testify to the transaction between the parents, Frederick and Augusta, and Ewald; (3) that the transaction between the widow, Anna, and *Leo* being embodied in the notes and mortgage, their agreement cannot be varied so as to establish a trust in favor of the plaintiffs; (4) that there is no evidence to show that the defendant *Albert* has received or converted any of the proceeds of the mortgage given by Anna to *Leo* to secure the payment of $9,850; (5) that the finding that Ewald fully performed the contract of settlement made between him and his parents is contrary to the weight of the evidence.

No doubt the most serious question in this case is that raised by the first contention of the defendants, that there is not sufficient proof of an agreement between Ewald and his parents.    We have carefully examined this question and are agreed that upon the case as a whole there is ample support for the finding made by the trial court.    If the testimony of Anna and her mother stood alone, a much more serious question would be presented.    The conduct of the parents, of Ewald, of *Leo,* and of Anna can be explained satisfactorily only upon the theory that there was such a valid contract known to all the parties.    The fact that *Leo* exacted the payment of $750, the amount of the judgment in favor of the first wife, in cash, and on account of that judgment, is of itself a very significant circumstance so far as *Leo* is con-

cerned.    If Ewald had had no interest in the property there
was no reason for *Leo* to take this judgment into considera-
tion in any respect.    Without referring to the many circum-
stances which sustain the findings of the court, we will say
that in our opinion the findings are sustained by the clear
preponderance of the evidence.

As to the contention that Anna, wife of the deceased
Ewald, was incompetent as a witness under the provisions
of sec. 4069, Stats., the plaintiffs in this action did not claim
from, through, or under Anna; she was not a party, either
necessary or proper, to the action.    Ewald was never seised
of the premises; she was therefore never entitled to any
dower interest therein, and we see not the slightest objection
to her competency as a witness.

It is claimed that the evidence offered to prove that *Leo*
held notes and a mortgage for $9,850 as trustee for the bene-
fit of the children was incompetent in that it tended to vary
or contradict the terms of a written instrument, to wit, the
notes and mortgage.    The testimony offered in no way con-
tradicts or varies the terms of the notes and mortgage.    From
an early day it has been held that the true consideration for a
conveyance of real estate may always be inquired into and
established by parol, although the conveyance be absolute
upon its face; as, for instance, a deed absolute in form may
be shown to be in fact a mortgage.    Within this principle
we think the evidence was properly admitted.

It is claimed there is no evidence to sustain the finding
and conclusion of the trial court that the defendant *Albert*
was guilty of fraud and therefore liable to the plaintiffs in
this action.    This is an action begun against the defendants
to follow a particular fund and impress it with a trust in
favor of the plaintiffs, and the sixth conclusion of law is
"That the said *Leo Glander* and *Albert Glander* are hereby
charged as trustees of said sum so received."    The judg-
ment is that the sum of $10,757.20 so received in payment

of the notes and mortgage was in trust for the plaintiffs and that "the defendants as such trustees are jointly and severally liable to plaintiffs for said sum," etc.

There is no evidence whatever in the record to show that *Albert* ever received any part of this fund; on the contrary, the evidence establishes clearly that he did not. It is difficult to see how there can be joint recovery against two defendants for the same fund,—against one on the ground that he holds the fund as trustee, and the only other possible liability against the other defendant being that he was guilty of some wrongdoing. The fund having been received entirely by *Leo, Albert* having received no part thereof, it must be held that as to *Albert* no liability as a trustee of the fund in question has been established.

It is also contended on behalf of the defendants that the evidence fails to support the finding that Ewald fully performed the contract of support, if it be admitted that there was one. We have examined the evidence in respect to this finding and we think it ample to support the finding made.

Many errors are assigned as to findings which relate to merely evidentiary matters. We have examined all of the errors assigned and find no reversible error except as stated.

*By the Court.*—As to the defendant *Leo* the judgment of the circuit court is affirmed. As to the defendant *Albert* the judgment of the circuit court is reversed, with directions to dismiss the complaint. One bill of costs will be allowed in this court in favor of the respondents and against the appellant *Leo*.